UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILMER RENE PINEDA MEJIA,

    Petitioner ,

v.                                                           CASE NO: 8:12-cv-2187-T-30TBM
                                                                    (Crim. Case No. 8:10-cr-497-T-30TBM)

UNITED STATES OF AMERICA ,

    Respondent .

_____/

## ORDER

This cause comes before the Court upon Petitioner's amended motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 (CV Dkt. #5) and the Respondent's response (CV Dkt. #10). Upon review of the briefs and the underlying criminal proceedings, the Court determines that the motion should be denied.

## BACKGROUND

Petitioner, Wilmer Rene Pineda Mejia, plead guilty (pursuant to a plea agreement) to conspiring to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846. Petitioner was sentenced to 87 months imprisonment. He did not appeal.

Petitioner timely filed this 28 U.S.C. § 2255 motion raising four claims of ineffective assistance of trial counsel for:

    (1) "defending two separate defendant's in the scope of the same conspiracy;"

    (2) "failing to set aside time to review discovery, PSI, or follow through on any motions including suppression of evidence;"

(3) "creating false and misleading impressions and statements along with failing to argue or object issued in PSI, or Safety Valve departure;" and

(4) "purposefully default[ing] on filing an appeal after the sentencing hearing even after knowing his client's desire to do so."

(CV Dkt. #5).

## **STANDARD OF REVIEW**

Title 28 U.S.C. § 2255 sets forth the framework for reviewing a federal prisoner's sentence for any of the following four reasons: (1) the sentence was imposed in violation of the Constitution of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Case law establishes that only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988).

In order for ineffective assistance of counsel to be grounds for habeas relief Petitioner must satisfy the test establish in *Strickland v. Washington*. This requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance, which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding could have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate,

2

but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

## RIGHT TO COLLATERALLY ATTACK SENTENCE

It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily. *See United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). Guilty pleas waive all but jurisdictional claims up to the time of the plea, *see Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Stano v. Dugger,* 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991), and forecloses most claims from collateral attack, *see United States v. Broce,,* 488 U.S. 563, 569 (1989). This waiver includes constitutional claims. *See Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir. 1990) (double jeopardy claims waived). Stating that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing," the Eleventh Circuit opined that to hold otherwise would "permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

Petitioner has waived grounds one, two, and three by entering into a plea, knowingly and voluntarily. In the Plea Agreement, signed by Petitioner, he states:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and **expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground**, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u>

3

> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eight Amendment to the Constitution; provided, however that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence authorized by Title 18, United States Code, Section 3742(a).

(Emphasis In Bold Added),(CR Dkt. #87, p. 12-13).

The court, before accepting Petitioner's plea, made sure he understood what he was doing. After placing him under oath, the court asked:

> **Court**: (Explanation of Trial Rights Omitted)
>
> **Court:** The reason I'm laying out all these trial rights for you, even though you tell me you want to plead guilty, is because I want to make sure you understand the full consequences of your plea. As I say, by pleading here you're not just admitting these two charges, but you're in effect giving up, you're waiving all of these trial rights that I've just outlined. Essentially you're telling me that you do not wish to fight the allegations and you understand in a few months you'll be brought back to be punished. You understand this, Mr. Gonzalez?
>
> **Mr. Gonzalez:** Yes, sir.
>
> **Court:** And you, Mr. Mejia?
>
> **Petitioner:** Yes.

(CR Dkt. #141 , p. 12-13). In regards to Petitioners right to appeal, the court stated: "You have three grounds that you can raise on appeal and only three grounds." *Id* at 23. The court went on to explain the three grounds then asked Petitioner:

> **Court:** Do you understand it, Mr. Gonzalez?
>
> **Mr. Gonzalez:** Yes, sir.

4

**Court:** And you, Mr. Mejia?

**Petitioner:** Yes.

*Id.* As a result of these conversations, Petitioner had knowledge of the consequences of entering such a plea.

In regards to the voluntary nature of Petitioner's plea, the Plea Agreement states:

> The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).

(CR Dkt. #87, p. 13). Further, the court addressed the voluntary nature of Petitioner's plea.

**Court:** Mr. Mejia, has anybody promised you anything other than what is set forth in your plea agreement to get you to plead?

**Petitioner:** No.

**Court:** Anybody promise you a particular sentence?

**Petitioner:** No

**Court:** Feel like anybody has threatened you into this decision to plead or that they perhaps threatened a family member to get you to plead?

**Petitioner:** No.

**Court:** Okay. Anybody forcing you into the decision?

**Petitioner:** No

5

(CR Dkt. #141, p. 26). Based on Petitioner's own sworn answers, there is no indication he was forced, threatened or coerced into taking the plea deal. Consequently, the Petitioner waived grounds one, two and three by entering a valid plea.

## **DISCUSSION**

Although grounds one, two and three were waived through the knowing and voluntary entry of a plea, each would have failed on the merits had it not been waived. In addition, ground four also fails on the merits. By way of explanation to Petitioner, each ground will now be addressed.

Petitioner asserts the following grounds for relief: ineffective assistance of trial counsel for: 1) "defending two separate defendant's in the scope of the same conspiracy;" 2) "failing to set aside time to review discovery, PSI, or follow through on any motions including suppression of evidence;" 3) "creating false and misleading impressions and statements along with failing to argue or object issued in PSI, or Safety Valve departure;" and 4) "purposefully defaulted on filing an appeal after the sentencing hearing even after knowing his client's desire to do so." (CV Dkt. #5). Although Petitioner now claims ineffective assistance of counsel, when accepting Petitioners plea, the court asked Petitioner:

> **Court:** You've been represented here by Mr. Abreu. Do you have any complaints about anything that he has done on your behalf?
>
> **Petitioner:** No.

(CR Dkt. #141, p. 26). At the time Petitioner entered his plea he had no complaints about counsel.

6

**Ground One:**

Petitioner claims his counsel was ineffective for defending two defendants in the scope of the same conspiracy. Petitioner states:

> Coincidently defendant's counsel continued representing co-defendant Mr. Hilton Adorno cited on original indictment, whom also plead guilty and received a much lighter sentence even after being more involved in the investigation. On defendant's PSI report, co-defendant Mr. Hilton Adorno is not mentioned, but on Mr. Hilton Adorno's PSI report defendant is mentioned as a codefendant of which Counsel represented simultaneously and gained a better sentences and overall defense strategy. Visiting and communicating with Mr. Adorno, with greater aplomb and effectiveness.

(CV Dkt. #5, p. 5). Petitioner is factually mistaken. He is not listed as a co-defendant in Adorno's pre-sentence report (PSR or PSI). And Petitioner and Adorno were charged with separate individual conduct.

Adorno was charged with conspiracy beginning on an unknown date and continuing through January 20, 2011, for the following conduct:

> 10. On January 6, 2011, a confidential informant (CI) working with law enforcement officers called Nieves and arranged a methamphetamine purchase, which would take place at a residence in Inverness, Florida. The CI and an undercover law enforcement officer went to the Inverness residence and purchased 55.5 grams of a mixture containing 46.9 grams of actual methamphetamine from Javier Aviles and Inii Paoli Adorno Rosario for $2, 600.
>
> 11. On January 20, 2010, agents searched the Inverness residence and arrested Adorno, who told agents that he remembered selling methamphetamine to the undercover special agent. Adorno further stated that he was working for "John Smith" and that he was in charge of selling methamphetamine, transporting methamphetamine to different locations, and counting the money derived from the sale of methamphetamine. Finally, Adorno stated that his boss paid him $400 a week.

(Case # 8:11-cr-51-T-30AEP; PSR p. 3).

Petitioner, Pineda Mejia, was charged with conspiracy from an unknown date until March 1, 2011, and although other individuals were named in Petitioners conspiracy count,

7

none of the individuals were Adorno. (Case # 8:10-cr-497-T-30TBM; PSR, p.5). The conduct for which Petitioner was charged was:

> 12. On two occasions prior to October 26, 2010, Farzaneh Daemi (Daemi) purchased a total of 340.2 grams of a mixture containing methamphetamine from Wilmer Rene Pineda Mejia. (Pineda)
>
> 13. On October 26, 2010 (sic.), Daemi went to Pineda's residence in Bushnell, Florida and purchased 210.7 grams of a mixture containing 167.9 grams of actual methamphetamine from Daemi for $10,500. When Daemi left Pineda's residence, law enforcement officers who had observed her go into the residence stopped Daemi and informed her that a federal warrant had been issued for her arrest. Law enforcement officers searched Daemi's car and found the methamphetamine she had just purchased from Pineda. Daemi cooperated with law enforcement officers, informing them about the methamphetamine she previously had purchased from Pineda.
>
> 14. On October 27, 2010, law enforcement officers searched Pineda's residence and found the $10,000 in cash that Daemi had paid him the day before. The officers also found 500 grams of cocaine hydrochloride buried in a shed in the back yard.

*Id* at 3.

Petitioner and Adorno were each accountable only for his own separate conduct. Petitioner sold a much higher quantity of drugs than Adorno, and his resulting guideline calculation was higher. Petitioner admitted that his offense conduct was accurate at sentencing:

> **Court:** Do you have any objections to the factual accuracy of the report?
>
> **Petitioner:** Excuse me?
>
> **Court:** Are the facts contained in the report accurate?
>
> **Defendant:** Yes.

Petitioner fails to demonstrate deficient performance on the part of counsel or prejudice resulting therefrom. For these reasons ground one fails for lack of merit.

**Ground Two:**

In ground two, Petitioner claims counsel was ineffective for failing to set aside time to review discovery, the PSI, or follow through on any motions including suppression of evidence. Petitioner states:

> When counsel did come to visit with his client, he spent more time reviewing with defendant's co-defendant (Mr. Hilton Adorno), than he did with him, and had very few minutes at the end of his session with Mr. Adorno to strategize with his other defendant. He continually failed to pursue any motions, including but not limited the Motion to Suppress Illegally Seized Evidence . Nor did counsel file or discussed objections or arguments to PSI report with his client even after the Court gave an extension upon defendant's remarks. Defendant views with subjective opinion the underlying and evident implicit Double Agent strategy that counsel undeniably demonstrated throughout the course of defendant's case. Including but not limited to counsel continuing to represent his client after he plead guilty and final payment for his defense was abnegated by third party.

(CV Dkt. #5, p.6-7). Petitioner fails to demonstrate how spending more time with Adorno was deficient performance on the part of counsel. Further, Petitioner does not identify the "illegally seized" evidence counsel was allegedly deficient for failing to suppress. Nor does he explain why its seizure was "illegal."

In regards to the PSR, during sentencing, the Judge asked Petitioner:

**Court:** Have you had the opportunity to read and discuss the presentence report?

**Petitioner:** Yes.

(CR Dkt. #137, p.4).

Petitioner also fails to demonstrate prejudice. Petitioner makes no claim that, had the "illegally seized" evidence been suppressed, Petitioner would not have pled. Nor does Petitioner demonstrate that had counsel spent more time reviewing "discovery or PSI"

9

Petitioner would have received a lesser sentence. Consequently, Petitioner fails to satisfy

*Strickland.*

**Ground Three:**

Petitioner claims ineffective assistance of counsel for failing to raise objections to the presentence report and for failing to argue for a safety valve or minor role reduction. Petitioner stated:

> Counsel never afforded time to review any pertinent matters with his client such as Discovery, Motions, or Plea agreement and PSI. Neither were there any objections to PSI or including clarifications of past arrests that never occurred, nor did he argue for the Safety Valve entitlement or Minimum Participation that defendant qualified for since he was not part of the 6 year investigation that lead to the conspiracy that he was ultimately involved in at the final phase of the investigation. Counsel's most effective strategy was his detriment to his client's legal rights or claims. He did was not present for the initial PSI interview nor communicated to client to the interview and what was to take place. He did not object to issues in the PSI client wanted objected.

(CV Dkt. #5, p. 8). Again, Petitioner is mistaken. His counsel did convince the Government to concede a safety valve reduction. Petitioner received credit for it at sentencing:

> **Prosecutor:** Your Honor, just to let the court know, the defendant, since the PSR was prepared, did debrief and is eligible for a safety value with consideration, which is not accounted for here.
>
> **Court:** Okay.
>
> **Prosecutor:** The debriefing just occurred yesterday or earlier – or Monday, but this week, so I just received this information.
>
> **Court:** What does that do to the guidelines?
>
> **Probation Officer:** Judge, at the end of the day, he will be a 29 limit. The fine range does not change, and his range of imprisonment will be 87 to 108 months.

10

> **Court:** The court adopts the undisputed factual statements and guideline applications as its findings of fact and determines that the advisory guidelines are Total Offense Level 29, Criminal History Category I, which calls for imprisonment of 87 to 108 months, supervised release five years, and a fine of $15,000 to $10 million and a $100 special assessment.

(CR Dkt. #137, p. 5).

Beyond the safety valve claim, Petitioner does not state what specific facts existed to support any objections his lawyer could have made. Petitioner was only held accountable for the sales he himself made. Without evidence supporting other objections, Petitioner fails to establish deficient performance on the part of counsel.

Petitioner also fails to demonstrate prejudice. Petitioner does not point to anything his counsel could have done that would have resulted in a lesser sentence. And, although Petitioner claims errors within the PSI report, he does not identify any error. He only makes conclusory statements. Conclusory statements are insufficient to merit habeas relief. *See U.S. v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

**Ground Four:**

In ground four, Petitioner claims deficient performance on the part of counsel for "purposefully defaulting on filing an appeal after the sentencing hearing even after knowing his client's desire to do so." (CV Dkt. #5, p. 9). Petitioner asserts:

> After sentencing hearing Defendant had not heard the sentence handed down by the Judge, so counsel told him at which time defendant asked to file an appeal on his behalf and counsel acknowledged defendants desire and stated to his client that he would see him shortly in the holding cell to discuss the appeal process but counsel never appeared. After being transported back to Pinellas County I tried to telephone him on various occasions but counsel would not accept my calls. I also had several

11

>friends and family call him but he was never available to speak with them including Ms. Lidia Bravo who tried telephoning him on more than several occasions from telephone # (352) 512-1629, but his secretary instructed her that he was unavailable. Counsel never even had the decency of corresponding with his client after the sentencing hearing if he was not able to personally meet with his client.

(CV Dkt. #5, p. 9). However, the transcript from Petitioner's sentencing shows Petitioner acknowledged he did not want to appeal:

> **Court:** Mr. Mejia, to the extent permitted by your plea agreement, you have the right to appeal from the judgment and sentence within 14 days from today. Failure to appeal within the 14-day period will be a waiver of your right to appeal. The government also has a right to appeal from the sentence. You should have in front of you a form entitled "Declaration of Intent to Appeal." That form states whether you do or do not wish to file an appeal. The Form is in English on one side and Spanish on the other, and there's a stamped envelope addressed to the Clerk's Office provided. I direct you to complete the form and mail it into the Clerk's Office at the end of the 14-day appeal period. If you do not return the form, I will accept that as an acknowledgment that you do not wish to file an appeal and that that was an informed and voluntary choice on your part.

(CR Dkt. #137, p. 9). Petitioner did not return the form. As explained at sentencing, the court accepts that as an acknowledgment that he did not want to file an appeal. The purpose of the form and explanation on the record is to avoid the very argument Petitioner makes here.

Having accepted the failure to file the "Declaration of Intent to Appeal" form as an acknowledgment that Petitioner did not want to appeal, he will not now be heard to claim to the contrary.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Petitioner has failed to establish he is entitled to federal habeas relief.

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #5) is DENIED.

2. The Clerk is directed to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3. The Clerk is directed to terminate from pending status the amended motion to vacate found at Dkt. #136, in the underlying criminal case, number 8:10-cr-497-T-30TBM.

## **CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED.**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S.

13

473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 355-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida on this 28th day of June, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2012\12-cv-2187 deny 2255.docx